LANGSTON UNIVERSITY — CHANGE IN PURPOSE Conversion of the land granted by the United States to the State for the use and benefit of the institution, now named Langston University, or the proceeds thereof, to any purpose other than educational would violate Sections 8 and 12 of the Oklahoma Enabling Act. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following question: Can Langston University be converted to a purpose other than educational without violating agreements and conditions made with the United States Government? In a legal sense, the term "convert", generally, has reference to property. It is in this context in which your request for an opinion has been considered. Concerning those agreements and conditions made with the United States Government, which are in the nature of ordinary contracts, any determination of whether property of Langston University could be converted to a purpose other than educational without violating such contracts would necessarily depend upon the specific terms and conditions of each contract and the resulting effect which such conversion would have thereon. No reference is made in your request to any specific terms and conditions of any such contracts, therefore, we cannot answer your question as it relates to those agreements and conditions made with the United States Government, which are in the nature of ordinary contracts. Concerning those agreements and conditions made with the United States Government, which are embodied in the Oklahoma Enabling Act, Sections 8 and 12 of that Act would appear to be pertinent to this question to the extent that those sections relate to land granted by the United States to the State, or the proceeds thereof, for the use and benefit of the "Colored Agricultural and Normal University." The terms and provisions of the Oklahoma Enabling Act, Act of Congress, June 16, 1906, were irrevocably accepted by the State as a condition to admission to the Union, and those sections of the Act touching upon the care and disposition of lands and money granted in trust by the United States to the State, unlike those sections relating solely to political rights of the new state, have been held to remain in force after the admission of the State into the Union since their subject matter is one within the proper regulating power of Congress, Williamson v. Commissioners of Land Office,301 P.2d 655 (1956). The pertinent portion of Section 8 of the Oklahoma Enabling Act reads as follows: "That Section 13 in the Cherokee Outlet, Tonkawa Indian Reservation and Pawnee Indian Reservation, reserved by the President of the United States by Proclamation issued August 19, 1893, opening to settlement the lands, and by any Act or Acts of Congress since said date in Section 13 and all other lands which have been or may be open to settlement in the Territory of Oklahoma, and all lands heretofore selected in lieu thereof, is hereby reserved and granted to said state for the use and benefit of the . . . Agricultural and Mechanical College and the Colored Agricultural Normal University, one-third: The said lands or the proceeds thereof as above apportioned shall be divided between the institutions as the Legislature of the State may prescribe: Provided, That the said lands so reserved or the proceeds of the sale thereof shall be safely kept or invested and held by said state and the income thereof, interest, rentals or otherwise, only shall be used exclusively for the benefit of said educational institutions. Such educational institutions shall remain under the exclusive control of said state and no part of the proceeds arising from the sale or disposal of any lands herein granted for educational purposes, or for the income or rental thereof, shall be used for the support of any religious or sectarian school, college or university." The pertinent portion of Section 12 of the Oklahoma Enabling Act provides as follows: ". . . The following grant of land is hereby made to said state from public lands of the United States within said state, for the purposes indicated, namely: For the benefit of the . . . Colored Agricultural and Normal University, one hundred thousand acres. . . ." In the Williamson case, supra, the Court held that the provisions of the Oklahoma Enabling Act touching on the care and disposition of lands and moneys granted in trust by the United States to the State of Oklahoma for the benefit of the common schools and certain educational institutions of the State are not conditions qualifying the political rights of a new state, but rather pertain to proprietary rights of the United States and are, therefore, within the proper regulating power of Congress, as a condition of admission to statehood, and such provisions continued in force after admission to statehood. At page 659 of the opinion, the court in the Williamson case, supra, stated as follows: "Herein, there are involved conditions affixed by Congress in the Enabling Act which pertain to proprietary rights of the United States and the placing of restriction upon the disposition of the property being placed in trust with the State, as distinct from conditions qualifying political rights of the new State. We do not perceive a limitation or restriction on the State in the exercise of its sovereign powers in the advancement of education or of schools in terms of Enabling Act. We see therein only regulations touching the care and disposition of properties granted in trust to the State by the Federal Government. "It has been held by the highest authority that congressional regulations in an enabling act remain in force after admission of the State into the Union if the subject is one within the regulative power of the Congress. United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1? 58 L.Ed. 107." The court in the Williamson case, supra, went on to conclude that the provisions in the Enabling Act, touching on the care and disposition of lands and monies granted in trust by the United States to the State of Oklahoma, exist as valid laws of the United States and may not be modified or changed by an act of the Oklahoma Legislature or by the people of Oklahoma in amendment of the Oklahoma Constitution. It would, therefore, follow that Sections 8 and 12 of the Oklahoma Enabling Act, touching on the care and disposition of lands and money granted in trust by the United States to the State, presently exist as valid laws of the United States and may not be modified or changed by an act of the Oklahoma Legislature or by the people in amendment of the Oklahoma Constitution. Under both Section 8 and Section 12 of the Oklahoma Enabling Act, grants are made by the United States to the State of Oklahoma for the use and benefit of the "Colored Agricultural and Normal University," which was established by the Legislature of the Oklahoma Territory in 1897, now named Langston University. The grants contained in these sections of the Oklahoma Enabling Act are specific grants for the use and benefit of the educational institutions designated therein. In addition, following the grants in Section 8, it is expressly provided that the beneficiary educational institutions shall remain under the exclusive control of the State, and the express language of this section and Section 12 clearly negates any congressional intent that the grants contained therein be used to support any purpose other than that expressed therein. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Conversion of the land granted by the United States to the State for the use and benefit of the institution, now named Langston University or the proceeds thereof, to any purpose other than educational would violate Sections 8 and 12 of the Oklahoma Enabling Act. (Nathan J. Gigger)